**Affirmed and Opinion filed March 25, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00236-CR

---

### ROBERT RONALD PERALES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 1511374**

---

## OPINION

Appellant Robert Ronald Perales challenges his conviction for online solicitation of a minor. Concluding that the jury's guilty finding is supported by legally sufficient evidence, the trial court did not err in admitting evidence of an internet search by appellant, and appellant was not entitled to an outrageous government conduct defense, we affirm.

## *Background*

Appellant started a conversation on the Plenty of Fish dating application with a user who had a profile identifying herself as 18-year-old Jennifer. Unbeknownst to appellant, the account had been created and was managed by Sergeant Wilson of the High-Tech Crimes Unit of the Harris County Sheriff's Office. There were three pictures on the account of another officer, taken when she was 14 and 16 years old.

After exchanging a series of messages on Plenty of Fish, Wilson, posing as Jennifer, asked appellant how old he was.[1] Appellant said that he was 20, but he was 26. Jennifer then disclosed that she was only 16. Appellant responded, "[I] still wanna get to know you if that[']s cool." Jennifer asked, "how much"? to which appellant responded, "A lot." During the conversation, appellant discussed in detail sexual acts he planned to engage in with Jennifer, ultimately leading to sexual intercourse. She said she was afraid of getting pregnant, to which he responded that he could bring a condom. She also told him that she lived with her mother. Appellant asked when Jennifer's mother was leaving for work and asked for Jennifer's address, which she provided. Jennifer told appellant he could come over "Now I guess if you fr" ("fr" meant "for real"). Appellant gave Jennifer his phone number and said he was on the way. He then asked, "Are you the police?"

Deputy Chu, posing as Jennifer, then called appellant. Appellant said he would arrive around 9 p.m. After the phone call, Chu and appellant began texting each other. Appellant again asked if she was the police and said he wanted to "mak[e] sure this isn[']t a set up." Appellant also texted later, "You sound older than 16" and asked for a picture. She responded that she was getting ready. Appellant then texted that he was at the gate of the apartment complex where

---

[1] We refer to the online persona as "Jennifer" throughout this opinion.

Jennifer purportedly lived. Appellant asked her to meet him at his car, but she asked him to come to the door. Appellant called and again asked her to come outside, and she first said she was scared and then said she was not "fully dressed." Appellant said "this sounds suspicious" but eventually went to the apartment door. Police officers opened the door. Appellant ran away, but when he was apprehended, he said he was sorry and said, "please forgive me."

A jury found appellant guilty of online solicitation of a minor and assessed punishment at three years' confinement. The trial court suspended the sentence, placed appellant on community supervision for five years, and certified appellant's right to appeal.

## *Discussion*

In six issues, appellant challenges (1) the sufficiency of the evidence in support of the jury's finding of guilt, (2) the jury instruction on the entrapment defense submitted to the jury, and (3) the trial court's admission of evidence involving an internet search made by appellant. Appellant also contends police officers engaged in outrageous government conduct in violation of his due process rights by "creat[ing] an online persona with an intentionally ambiguous age and then arrest[ing] a man for child solicitation." We first address the sufficiency challenges and then the remaining issues.

### I.     Sufficiency Challenges

Appellant contends (1) there is no evidence that he solicited an actual individual, (2) the evidence conclusively establishes reasonable doubt regarding whether appellant believed Jennifer was under 17, and (3) the evidence conclusively establishes "reasonable doubt as to the non-existence of entrapment." When reviewing sufficiency of the evidence, we view all the evidence in the light

most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id*. This standard applies equally to both circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to the appellant's guilt so long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to the elements of the offense as defined by the hypothetically correct jury charge for the case. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*. The "law as authorized by the indictment" includes the statutory elements of the offense as modified by the indictment. *Id*.

A person commits the offense of online solicitation of a minor

if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in

4

sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Tex. Penal Code § 33.021(c). "Minor" is defined as "an individual who is younger than 17 years of age" or "an individual whom the actor believes to be younger than 17 years of age." *Id*. § 33.021(a)(1).

Appellant was indicted with the following:

knowingly solicit[ing] over the internet, through a commercial online service, and by an electronic message service and system M. Wilson . . . an individual whom the Defendant believed to be younger than seventeen years of age to meet [appellant] with the intent that the Complainant would engage in sexual contact, sexual intercourse, and deviate sexual intercourse with [appellant].

**"An individual."** In his first issue, appellant concedes that he "solicit[ed] 'Jennifer' for sex," but contends "Jennifer is not an actual person." According to appellant, because Officer Wilson assumed a fake identity, he was not an individual as defined under the statute. Appellant says, "if a police officer is impersonating an individual, then he or she is necessarily <u>not</u> an individual." (Emphasis in original.)

Despite this novel argument, we have noted that the statute is meant to permit police officers "to pos[e] as . . . minor[s]" to intercept sexual predators before they "physically appear" at a meeting place to engage in sexual activity with a child. *Ex parte Moy*, 523 S.W.3d 830, 837 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing Senate Criminal Justice Comm., Bill Analysis, Tex. H.B. 2228, 79th Leg., R.S. (2005), and Tex. Penal Code § 33.021(c)). The Court of Criminal Appeals similarly recognized the "legitimate goal" under the statute "of prosecuting 'sexual predators who attempt to solicit a minor, *or a police officer posing as a minor*, for unlawful activity when the individual does not show up for the meeting.'" *Ex parte Lo*, 424 S.W.3d 10, 26 (Tex. Crim. App. 2013) (emphasis

5

added) (citing House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 2228, 79th Leg., R.S. (2005)); *see also Ex parte Ingram*, 533 S.W.3d 887, 897 (Tex. Crim. App. 2017) ("A police officer could be impersonating an individual under age 17 as part of a sting operation.").

Unbeknownst to appellant, Jennifer was, in fact, Officer Wilson. Nothing in the statute, however, prohibited Officer Wilson from posing as Jennifer in an attempt "to intercept sexual predators before they 'physically appear' at a meeting place [to engage] in sexual activity with a child." *Moy*, 523 S.W.3d at 837. In fact, the legislature expressly stated that under the statute, officers would be permitted to do so "to stop an offender before the offender could injure [a] child." *Id*. (citing House Criminal Jurisprudence Comm., Bill Analysis, H.B. 2228, 79th Leg., R.S. (2005)). We conclude there is sufficient evidence to support the jury's finding that Officer Wilson was an individual as defined by the statute. We overrule appellant's first issue.

**"[W]hom [appellant] believe[d] to be younger than 17 years of age."** Appellant also contends in his second issue that the evidence conclusively establishes a reasonable doubt as to his belief that the solicited individual was under 17. Appellant points to the following evidence in support of this argument: (1) Jennifer's Plenty of Fish profile said she was 18, and Plenty of Fish is an adult dating website whose users are supposed to be 18 or older; (2) appellant said he thought Jennifer was around 23 because his ex-girlfriend was 23 and Jennifer's profile photos looked like Jennifer was around the same age; (4) appellant had gone on many dates with women he met on Plenty of Fish, and none of those women were under 18; and (5) appellant texted Jennifer that she sounded older than 16, and Jennifer did not "reassert" that she was only 16. According to appellant, the jury's finding that he thought Jennifer was under 17 is not a rational

finding. We disagree.

The State presented evidence that after Jennifer told appellant she was only 16, appellant said, "[I] still wanna get to know you if that[']s cool." After Jennifer asked "how much"? appellant said, "A lot," and he subsequently discussed in detail the sexual contact he wanted to engage in with Jennifer, ultimately leading to sexual intercourse. Appellant also offered to bring a condom. He admitted at trial that he never told Jennifer he was not interested in meeting up with someone who was only 16. He drove 30 to 45 minutes to meet up with Jennifer after she said she was only 16. He also offered to pick Jennifer up from school and asked her to skip school. He knew Jennifer lived with her mother, and they discussed how to get together without Jennifer's mother knowing. The pictures on Jennifer's Plenty of Fish profile were of a girl when she was 14 and 16 years old.

Appellant's own testimony provided some evidence from which the jury could have inferred that appellant believed Jennifer was under 17. Appellant testified that many users on Plenty of Fish lied about their age, so the jury reasonably could have inferred that appellant believed Jennifer when she told him she was 16, not 18. In fact, appellant represented himself as being five years younger than his actual age. The jury could have inferred that appellant lied about his age to make himself more attractive to a teenager. Appellant also spoke in detail about "the younger generation" and how they flirt in a sexually explicit manner. He conceded that Jennifer's answers were consistent with things someone 16 years old might say.

Appellant moreover repeatedly asked Jennifer if the police were involved (asking "Are you the police?" and if this was a set-up), he fled when he saw police officers, and he apologized when he was caught. The jury reasonably could have inferred that these actions showed a consciousness of guilt. *See Balderas v. State*,

7

517 S.W.3d 756, 767 & n.16 (Tex. Crim. App. 2016) (noting that evidence of flight evinces a consciousness of guilt); *see also Hedrick v. State*, 473 S.W.3d 824, 830-31 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("A defendant's conduct after the commission of a crime which indicates a 'consciousness of guilt' is admissible to prove that he committed the offense. . . . A consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt.").

The jury could have inferred from all this evidence that appellant believed Jennifer was under 17. And the jury was free to disregard appellant's self-serving testimony that he did not believe Jennifer was 16, particularly given all the evidence presented at trial. *See, e.g., Darkins v. State*, 430 S.W.3d 559, 566 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding in light of all the evidence presented at trial, the jury was free to disregard defendant's self-serving testimony about his lack of intent to cause bodily injury). Considering all the evidence in the light most favorable to the verdict, a rational jury could have determined beyond a reasonable doubt that appellant believed he was soliciting an individual who was younger than 17 years old. We overrule appellant's second issue.

**Entrapment Defense**. In his third issue, appellant contends that he raised the defense of entrapment and the State failed to present evidence to disprove the defense beyond a reasonable doubt. Entrapment is "a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense." Tex. Penal Code § 8.06(a). "Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." *Id*. In other words, the entrapment defense is not raised when the evidence suggests that the criminal design originated in the appellant's mind and officers merely furnished the opportunity for commission of the crime. *Zarate v. State*, 551 S.W.3d

8

261, 270 (Tex. App.—San Antonio 2018, pet. ref'd) (citing *Reese v. State*, 877 S.W.2d 328, 333 (Tex. Crim. App. 1994)).

A defendant raises the entrapment defense by producing evidence to establish every element of that defense. *Hernandez v. State*, 161 S.W.3d 491, 497 (Tex. Crim. App. 2005). The defendant must present prima facie evidence that (1) he engaged in the conduct charged; (2) he was induced to do so by a law enforcement agent; (3) the law enforcement agent used persuasion or other means; and (4) those means were likely to cause persons to commit the offense. *Id*. Once the defendant makes a prima facie showing of each element, the burden shifts to the State to disprove entrapment beyond a reasonable doubt. *Id*. at 498.

Entrapment includes a subjective and an objective component: the defendant must show both that (1) he "was actually induced to commit the charged offense by the persuasiveness of the police conduct," and (2) "the persuasion was such as to cause an ordinarily law-abiding person of average resistance" to commit the offense. *Id*. at 497 n.11. Presuming without deciding that appellant presented prima facie evidence that he subjectively was induced to commit the charged offense by the persuasiveness of police conduct, he was also required to present evidence supporting the objective component: that "the persuasion was such as to cause an ordinarily law-abiding person of average resistance nevertheless to commit the offense." *Id*.

Appellant argues "ambiguity surrounding Jennifer's age" might have led "an ordinary, law abiding person" to continue to chat with Jennifer.[2] But whether an

---

[2] Appellant specifically relies on the following evidence in support of his argument that there was ambiguity surrounding Jennifer's age: Jennifer initially said she was 18 on Plenty of Fish and declined to reassert that she was only 16 when appellant commented that she seemed older than 16. But users on Plenty of Fish were required to be 18, so to be on the platform, Jennifer was required to say she was 18, and Jennifer told appellant she was 16 after they started chatting. Even if there is some evidence that appellant was confused about Jennifer's age, that

ordinary, law abiding person would have *continued to chat* with Jennifer is not the question. The question is whether a law-abiding person of average resistance would solicit a meeting with someone to engage in "sexual contact, sexual intercourse, or deviate sexual intercourse" after being told the person was 16.

The State presented evidence that a law-abiding person of average resistance would not do that. Officer Wilson testified that he used Jennifer's profile numerous times on Plenty of Fish. He said when he reveals Jennifer is only 16, one of two things happen "[a]lmost 100 percent" of the time: "One, either they stop chatting with me immediately or I get chastised for being young and on that site." In response to the question, "Based on your training and experience and specifically experience with this, have you ever known somebody to lie about their age when they're an adult on these websites and say that they're a juvenile?" Wilson said, "No. Other than an investigator, no."

Nothing in the record suggests that appellant was objectively induced to commit the offense by such persuasion that would cause an ordinarily law-abiding person of average resistance to commit the crime of online solicitation of a minor. *See Zarate*, 551 S.W.3d at 271. Moreover, nothing in this record shows that the officers involved did anything more than offer an opportunity for the offense to be committed. Appellant initiated the conversation with Jennifer on Plenty of Fish, continued the conversation after she told him she was 16, told her he wanted to have sexual intercourse with her, set up a meeting with her, and showed up to the meeting. *See Robles v. State*, 585 S.W.3d 591, 598 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (holding there was no evidence of entrapment when the defendant propositioned an undercover agent posing as a sex worker). Based on this record, the evidence did not raise the defense of entrapment, and the burden

---

does not mean that an ordinary, law abiding person would be confused.

10

never shifted to the State to disprove entrapment beyond a reasonable doubt. We overrule issue three.

In his fifth issue, appellant contends the jury charge instruction on entrapment did not include a correct explanation of the State's burden of proof. We do not reach this issue because appellant did not present a prima facie case of entrapment and thus was not entitled to the instruction. *See Zarate*, 551 S.W.3d at 271 ("To warrant an instruction for entrapment, a defendant must present a prima facie case [supporting each element of entrapment]."). The trial court's error in the instruction, if any, would thus be harmless. *See Ramirez v. State*, 611 S.W.3d 645, 654 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) ("Because appellant was not entitled to the instruction, any error contained therein is harmless."). We similarly do not reach appellant's argument that he was entitled to an entrapment instruction even though he pleaded not guilty.

## II. Evidentiary Challenge

Appellant contends in his sixth issue that the trial court abused its discretion in admitting evidence of appellant's internet search history on the day before he contacted Jennifer. Appellant's internet browsing history from that day showed a search on a pornography website for "ebony young teen." According to appellant, the probative value of this evidence was substantially outweighed by a danger of unfair prejudice under Texas Rule of Evidence 403.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009); *Foyt v. State*, 602 S.W.3d 23, 47 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). If the trial court's ruling falls within the zone of reasonable disagreement, we will affirm that decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Foyt*, 602 S.W.3d at 47.

Under Rule 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. In conducting a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered evidence and (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency to confuse or distract the jury from the main issues, (5) any tendency to be given undue weight by the jury, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be cumulative of other evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Foyt*, 602 S.W.3d at 48.

All evidence tends to be prejudicial to one party or the other. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Foyt*, 602 S.W.3d at 48. Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990); *Foyt*, 602 S.W.3d at 48. Prejudice is "unfair" if it has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Montgomery*, 810 S.W.2d at 378; *Foyt*, 602 S.W.3d at 48.

We turn to whether the evidence was unfairly prejudicial under the Rule 403 balancing test. First, the trial court could have reasonably concluded that the probative force of the evidence was considerable. Appellant's defense at trial was that he was confused about Jennifer's age. His internet browsing history from the day before for an "ebony young teen" tends to show that he intended to meet a young Black teenager like Jennifer for a sexual encounter. The evidence thus tends to rebut appellant's testimony that he did not intend to have sex with someone

12

under 17.

The trial court reasonably could have concluded that the evidence would not unduly tend to lead the jury to make an improper decision—appellant's internet search related directly to the charged offense of online solicitation of a minor because appellant had been searching for a "young teen" on a pornography website. The trial court likewise reasonably could have concluded that the evidence did not tend to confuse or distract the jury from the main issues in the case. The State presented ample other evidence that appellant wanted to meet a young teenager for a sexual encounter—appellant described the sexual acts he wanted to engage in with Jennifer after she told him she was only 16 and he arranged to meet her without her mother present the same day they began chatting.

The trial court further reasonably could have concluded that the jury would not tend to give the evidence undue weight—a State's witness testified that appellant did not view any child pornography on his phone and appellant testified that he was searching for role playing videos that did not actually involve underage girls. Finally, the trial court reasonably could have concluded that presentation of the evidence would not consume an inordinate amount of time or be needlessly cumulative—it took up only a few minutes of the short trial. The prosecutor mentioned the internet search during closing arguments only toward the end of the State's rebuttal and in conjunction with the following evidence—appellant wanted to meet Jennifer when her mother was not home, wanted to make sure there were no police officers involved, said based on the photos on Jennifer's profile of a teenaged girl that she was sexy, and drove 45 minutes to meet Jennifer around 10 p.m.

The trial court, after balancing the Rule 403 factors, reasonably could have concluded that the probative value of the evidence of appellant's internet search

history was not substantially outweighed by the countervailing factors specified in the rule. *See Gigliobianco*, 210 S.W.3d at 642-43; *Foyt*, 602 S.W.3d at 49. We conclude the trial court did not abuse its discretion in admitting the evidence. We overrule appellant's sixth issue.

### III. Outrageous Government Conduct

In his fourth issue, appellant contends that the police engaged in "outrageous government conduct" in violation of his right to due process. Appellant acknowledges he did not raise this issue in the trial court but asserts that he can raise this issue for the first time on appeal.

Only a few rights warrant an exception from the requirement for preservation of error. *Henson v. State*, 407 S.W.3d 764, 768 (Tex. Crim. App. 2013); *Elizondo v. State*, 541 S.W.3d 271, 275 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Waivable only rights include the right to assistance of counsel, the right to trial by jury, and the statutorily mandated right that appointed counsel have ten days before trial to prepare. *Henson*, 407 S.W.3d at 768; *Elizondo*, 541 S.W.3d at 275. Absolute, systemic requirements that cannot be waived include personal jurisdiction, subject matter jurisdiction, and a penal statute's compliance with the separation of powers section of the Texas Constitution. *Henson*, 407 S.W.3d at 768; *Elizondo*, 541 S.W.3d at 275. Defendants must preserve error on alleged violations of most constitutional rights, even those assured by due process. *Elizondo*, 541 S.W.3d at 275.

Appellant does not cite any authority or offer any analysis indicating that outrageous government conduct violates a right so fundamental to the proper functioning of our adjudicatory process that it need not be preserved. *See id*. But even if appellant were not required to preserve error, a deprivation of constitutional due process rights through outrageous government conduct is a defense which may

14

be raised only in "the rarest and most outrageous circumstances." *Moreno v. State*, 860 S.W.2d 612, 614 n.1 (Tex. App.—Corpus Christi 1993, pet. ref'd) (citing *United States v. Ivey*, 949 F.2d 759, 769 (5th Cir. 1991)); *see also Hubbard v. State*, 770 S.W.2d 31, 39 (Tex. App.—Dallas 1989, pet. ref'd) ("Although the boundaries of the outrageous conduct defense remain poorly defined, the subsequent cases have clearly limited it to instances of the rarest and most egregious government misconduct.").

We have already noted that the online solicitation statute is meant to permit police officers to do just what they did in this case: pose as a minor to intercept a sexual predator before he meets a minor to engage in sexual activity. *See Moy*, 523 S.W.3d at 837. And the Court of Criminal Appeals similarly recognized the legitimate goal "of prosecuting sexual predators who attempt to solicit . . . a police officer posing as a minor . . . for unlawful activity . . . ." *Lo*, 424 S.W.3d at 26. The police officers' activity in this case falls short of that which is necessary to invoke the defense of outrageous government conduct. *See Ivey*, 949 F.2d at 769; *see also United States v. Sandlin*, 589 F.3d 749, 758 (5th Cir. 2009) ("The standard for proving outrageous governmental conduct is extremely demanding."). We overrule appellant's fourth issue.

## Conclusion

We affirm the judgment of the trial court.


/s/     Frances Bourliot
        Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.

Publish — TEX. R. APP. P. 47.2(b).