

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00098-CR

EX PARTE OSCAR CALVIN FISHER

On Appeal from the 106th District Court
Garza County, Texas
Trial Court No. 14-2685, Honorable Carter T. Schildknecht, Presiding

December 10, 2015

## OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Oscar Calvin Fisher, appeals from the denial of a pre-trial writ of habeas corpus. By three issues,[1] appellant contends that section 33.021 of the Texas Penal Code[2] is: (1) unconstitutionally overbroad, in violation of the First Amendment to the United States Constitution;[3] (2) unconstitutionally vague, in violation of the

---

[1] Appellant's brief initially contained an issue arguing that section 33.021(b) of the Texas Penal Code was unconstitutional. That issue has been resolved by the Texas Court of Criminal Appeals in *Ex parte Lo,* 424 S.W.3d 10, 27 (Tex. Crim. App. 2013). The State has conceded error on that issue and has abandoned count 2 of the indictment.

[2] *See* TEX. PENAL CODE ANN. § 33.021 (West Supp. 2015). Further reference to the Texas Penal Code will be by reference to "section ____" or "§ ____."

[3] *See* U.S. CONST. amend. I.

Fourteenth Amendment;[4] and (3) unconstitutionally violates Article I, section 8, of the United States Constitution, also known as the Commerce Clause.[5] We will affirm.

## Factual and Procedural Background

Appellant was indicted in count one of a two-count indictment with intentionally and knowingly soliciting a minor, J1 (pseudonym), to meet appellant with the intent that J1 would engage in sexual contact, sexual intercourse, and deviate sexual intercourse with appellant. As such, count one alleges a violation of section 33.021(c) of the Texas Penal Code.

Appellant filed a pre-trial writ of habeas corpus, which the trial court denied. Appellant now brings forth his three constitutional challenges to the statute as outlined above. We will affirm.

## Penal Code Provisions

Section 33.021(c) states:

> A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Additionally, section 33.021(a)(1) defines "minor" as:

> (A) an individual who represents himself or herself to be younger than 17 years of age; or

---

[4] *See id.* amend. XIV.

[5] *See id.* Art. I, § 8.

(B) an individual whom the actor believes to be younger than 17 years of age.

Finally, section 33.021(d) provides:

It is not a defense to prosecution under Subsection (c) that:

(1) the meeting did not occur;

(2) the actor did not intend for the meeting to occur; or

(3) the actor was engaged in a fantasy at the time of commission of the offense.

With these provisions in mind, we next turn to the issue of the question of the proper standard of review that the Court must use in assessing the allegations of constitutional infirmity.

## Standard of Review

We review a facial challenge to the constitutionality of a statute as a question of law that we review *de novo. See Ex parte Lo,* 424 S.W.3d at 14-15. Traditionally, we begin with a presumption that the statute is valid and that the legislature did not act unreasonably or arbitrarily. *See id.* at 15. In such a review, the party challenging the constitutionality of the statute has the burden of establishing the statute's unconstitutionality. *See id.* We are taught that we should seek to uphold the statute as constitutional. *See Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015).

Under the traditional approach, we construe the statute according to its plain language, unless the language is ambiguous or would lead to absurd results that the legislature could not have intended. *See Williams v. State,* 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). Pursuant to the Texas Government Code, we read the words and

phrases in context and construe them according to the rules of grammar and common usage. *See* TEX. GOV'T CODE ANN. § 311.011(a) (West 2013). After doing so, if there is a reasonable construction that renders the statute constitutional, we defer to that construction. *See Peraza*, 467 S.W.3d at 514.

However, appellant contends that the statute at issue is an attempt by the State to restrict and punish speech based on its content and, thus, the usual presumption is reversed. *See Ex parte Lo,* 424 S.W.3d at 15. Content-based regulations, that is, those laws that distinguish favored from disfavored speech based on the idea expressed, are presumptively invalid, and the State bears the burden to rebut that presumption. *See id. (*citing *Ashcroft v. ACLU,* 542 U.S. 656, 660, 124 S. Ct. 2783, 159 L. Ed. 2d 690 (2004)). Further, the United States Supreme Court has applied the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content. *See id.* (citing *Turner Broadcasting Sys., Inc. v. FCC,* 512 U.S. 622, 642, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994)). Therefore, the issue before the Court is the correct standard of review to apply in this context.

The State urges the Court to use the traditional approach to the question of the constitutionality of the statute. The State's position is anchored in the Texas Court of Criminal Appeals' decision in the *Lo* case. In *Lo,* the Texas Court of Criminal Appeals was dealing directly with a facial challenge to subsection (b) of section 33.021. *See* § 33.021(b) (sexually explicit communications);[6] *Ex parte Lo,* 424 S.W.3d at 14. The

---

[6] § 33.021(b) read as follows: "A person who is 17 years of age or older commits an offense if, with the intent to arouse or gratify the sexual desire of any person, the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, intentionally: (1) communicates in a sexually explicit manner with a minor; or (2) distributes sexually explicit material to a minor."

4

court pointed out that the intermediate appellate court had used the wrong standard of review, the traditional presumption of validity, instead of the presumption-of-invalidity standard required when reviewing a First Amendment, content-based statute. *See Ex parte Lo,* 424 S.W.3d at 16. Following this explanation, the court then entered into a discussion of section 33.021(c). *See id.* This discussion was by way of contrast to the content-based prohibitions of section 33.021(b). *See id.* at 16-17. During this portion of the opinion, the court delineated what it felt was the conduct that was the gravamen of the offense under section 33.021(c), that being requesting a minor to engage in illegal sexual acts. *See id.* Thus, arose the conflict between conduct versus speech in determining the proper standard of review. The State essentially contends that *Lo's* discussion sets forth that the traditional standard of review is the proper vehicle to analyze a challenge to section 33.021(c).

Appellant, on the other hand, contends that such an analysis of whether the statute is directed at conduct versus speech is a false dichotomy. This is so, according to appellant, because the Texas Court of Criminal Appeals did not distinguish between expressive conduct and other speech. Further, according to appellant, the court's discussion of section 33.021(c) was an "off-handed remark in dicta." This would lead to the conclusion that the true analysis of appellant's contentions must be under a presumption-of-invalidity standard that the Texas Court of Criminal Appeals used in analyzing section 33.021(b).

At this juncture, it is worth noting that three of our sister intermediate appellate courts have reviewed contentions that section 33.021(c) is facially unconstitutional. The 1st District Court of Appeals undertook such a challenge in the case of *Maloney v. State,*

294 S.W.3d 613 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The *Maloney* court applied the traditional standard of review, that is, a presumption that the statute is constitutional. *See id.* at 626. After applying the traditional standard of review, the court concluded that the statute was not overbroad or unconstitutionally vague. *See id.* at 628-29. As noted above, there was no petition for discretionary review to the Texas Court of Criminal Appeals. *Maloney* was decided before the Texas Court of Criminal Appeals handed down the *Lo* opinion.

After the *Maloney* opinion, the 4th District Court of Appeals handed down an opinion in *Ex parte Zavala,* 421 S.W.3d 227 (Tex. App.—San Antonio 2013, pet. ref'd). As in this case, *Zavala* was an appeal from the denial of a pre-trial writ of habeas corpus. *Id.* at 230. Based upon the Texas Court of Criminal Appeals' decision in *Lo,* the *Zavala* court applied the traditional standard of review and upheld the constitutionality of section 33.021(c). *See id.* at 231-32. As noted in the original citation, the Texas Court of Criminal Appeals refused the petition for discretionary review.

Next, the 9th District Court of Appeals handed down its opinion in *Ex parte Victorick*, No. 09-13-00551-CR, 2014 Tex. App. LEXIS 5429 (Tex. App.—Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication), *cert. denied*, *Victorick v. Texas*, 135 S. Ct. 1557, 191 L. Ed. 2d 638 (2015). *Victorick* was an appeal of a pre-trial writ of habeas corpus. Again, our sister court applied the traditional standard of review to the facial challenge to section 33.021(c). *See id. at* \*4-6. When discussing the issue of conduct versus speech, the *Victorick* court again relied upon the Texas Court of Criminal Appeals' decision in *Lo. See id.* at \*7-8. However, this was not

the only support for the conduct analysis. The *Victorick* court also relied upon the United States Supreme Court case of *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93. S. Ct. 2908, 37 L. Ed. 2d 830 (1973), for the proposition that if the statute punishes conduct rather than speech, the courts apply a "rational basis" level of review to determine if the statute bears a rational relationship to a legitimate state purpose. Ex parte *Victorick,* 2014 Tex. App. LEXIS 5429, at *4. The *Victorick* court upheld the constitutionality of section 33.021(c) and the Texas Court of Criminal Appeals refused the petition for discretionary review.

Finally, the 1st District Court of Appeals issued its opinion in *Ex parte Wheeler,* ___ S.W.3d ___, No. 01-14-00868-CR, 2015 Tex. App. LEXIS 10117 (Tex. App.— Houston [1st Dist.] Sept. 29, 2015, pet. filed). In *Wheeler,* the court applied the traditional standard of review, citing the *Lo* opinion for authority and upheld the constitutionality of section 33.021(c). *See id.* at *5, *9, *13.

Thus, at this juncture, each court that has considered the issue of the proper standard of review has come down on the side of the traditional standard of review. That is, they have all refused to apply the presumption-of-invalidity that the Texas Court of Criminal Appeals used in analyzing the facial unconstitutionality of section 33.021(b). Having considered the current state of the law regarding allegations that section 33.021(c) is facially unconstitutional, we will apply the traditional standard of review. We do so because the prohibited act in section 33.021(c) is the conduct of requesting a minor to engage in illegal sexual acts. *Ex parte Lo,* 424 S.W.3d at 16-17. In addition to the teachings of *Lo* and the cases of the other Texas intermediate courts of appeals' cases we have cited, we note that the United States Supreme Court has advised that

7

"where conduct and not merely speech is involved" they view an overbreadth challenge differently than where speech alone is involved. *See New York v. Ferber,* 458 U.S. 747, 770, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982).

## Overbreadth Challenge

Remembering that it is the burden of appellant to demonstrate that the statute at issue is facially unconstitutional, *see Ex parte Lo,* 424 S.W.3d at 15, we begin with the proposition that, "[b]ecause of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is 'strong medicine' and have employed it with hesitation, and then 'only as a last resort.'" *See Ferber,* 458 U. S. at 769 (citing *Broadrick* 413 U.S. at 613). Thus, we are taught to be very circumspect in holding that a statute is facially unconstitutional.

How then do we analyze the statute at issue? First, what is the interest that the State is attempting to address? The *Lo* opinion gives insight into that inquiry when the Texas Court of Criminal Appeals states,

> Such solicitation statutes exist in virtually all states and have been routinely upheld as constitutional because "offers to engage in illegal transactions [such as sexual assault of a minor] are categorically excluded from First Amendment protection."

*Ex parte Lo,* 424 S.W.3d at 16. This is a legislative judgment which would, on its face, pass muster under the First Amendment. *See Ferber,* 458 U.S. at 759. Our determination of the State interest that the statute is attempting to address, in this case

8

the solicitation of minors for sexual exploitation, leads us to consideration of the application of appellant's facial constitutional challenge.

Appellant contends that the statute is facially unconstitutional because of the definitions of minor, as found in section 33.021(a)(1), and because section 33.021(d) excludes defenses that the actor did not intend for the meeting to occur or the actor was engaged in fantasy, also known as "age play."  Appellant's contentions seem to be that, because of the interplay between the definition of minor and the exclusion of defenses, there is a substantial number of consenting adults who would fall prey to this statute. To support this proposition, appellant cites the Court to one article, "The Prevalence and Scope of Ageplay," by Paul J. Dohearty and a citation to a website that purports to contain over 3,000 results for the key words "age play."  This, in turn, leads appellant to contend that the overbreadth involved is "substantial."  *See Ferber,* 458 U.S. at 769. Such a finding by this Court would then trigger the further finding that the statute was constitutionally infirm and thus allow us to invalidate it on its face.  *See id.* (citing *Broadrick,* 413 U.S. at 613).

We do not agree with appellant's assessment of the facts before the trial court and, thus, the facts before this reviewing court.  The cited article appears to be a self-published article by Mr. Dohearty, who also goes by the *nom de guerre* of Paul Rulof, which does not contain any indication that it is a professional publication or that it is subject to any peer review standards.  In fact, a quick read of the article leads to the conclusion that it is, at best, an anecdotal account of the observations of a layman regarding a subject matter that interests him.  As to the website notation under the key words "age play," there is nothing indicating what the publications are, the reach of the

publications, or whether any of these publications are expert treatises that have been subject to any type of peer review. For this Court to conclude that the overbreadth is substantial based upon these references would be to abandon our determination that the standard of review places the burden of establishing the statute's unconstitutionality, in this case, that the overbreadth is substantial, upon the party challenging the constitutionality. *See Ex parte Lo,* 424 S.W.3d at 15. This we may not do. We hold that section 33.021(c) is not unconstitutionally overbroad. We, therefore, overrule appellant's first issue.

## Vagueness Challenge

Appellant's second issue contends that section 33.021 is unconstitutionally vague in violation of the Fourteenth Amendment to the United States Constitution. *See* U.S. CONST. amend. XIV. As applicable in this case, the Fourteenth Amendment provides that, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." *See id.* Appellant's contention is that section 33.021(d) eliminates the intent element of 33.021(c). As a result of this interaction, appellant argues that a person of ordinary intelligence is denied a reasonable opportunity to know what conduct is prohibited. Appellant cites *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926), and *State v. Holcombe,* 187 S.W.3d 496, 499 (Tex. Crim. App. 2006) (holding the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited), in support of his contention.

10

Section 33.021(c) provides that an actor commits an offense when he knowingly solicits a minor to meet with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person. *See* § 33.021(c). Thus, the *mens rea* is provided in clear language. According to appellant, the problem is that section 33.021(d) then dispenses with the intent element. Section 33.021(d) provides that it is not a defense to prosecution that: (1) the meeting did not occur; (2) the actor did not intend for the meeting to occur; or (3) the actor was engaged in fantasy at the time of commission of the offense. *See* § 33.021(d).

In analyzing appellant's proposition, we are faced with two interpretations of the meaning of section 33.021(d). Appellant concludes that, from reading the plain language of section 33.021(d), the statute has internal inconsistency that has the effect of dispensing with the intent requirement. One reading of the plain language leads to the conclusion that the *mens rea* is focused on the time of the solicitation. *See Ex parte Wheeler,* 2015 Tex. App. LEXIS 10117, at *12-13; *Ex parte Victorick*, 2014 Tex. App. LEXIS 5429, at *19. On the other hand, appellant says that the denial of the defenses relates back to the time of the solicitation.

We conclude that *Wheeler* and *Victorick* are correct in their respective conclusions. We adopt these opinions for two reasons. First, the societal issue being addressed, the solicitation of minors to engage in sexual activity, is an area of significant importance. *See Ex parte Lo,* 424 S.W.3d at 21 (noting that "[t]here is no question that the State has a right—indeed a solemn duty—to protect young children from the harm that would be inflicted upon them by sexual predators"). Second, when faced with two conflicting constructions of a statute, one of which sustains its validity,

11

we apply the interpretation that sustains that validity. *See Ex parte Wheeler,* 2015 Tex. App. LEXIS 10117, at *12. The prohibitions against raising the defenses enumerated in section 33.021(d) apply only post-solicitation. *See id.* That is to say, the accused will not be entitled to a defensive charge that: (1) the meeting did not occur; (2) the actor did not intend for the meeting to occur; or (3) the actor was engaged in fantasy at the time of commission of the offense. Accordingly, we overrule appellant's second issue.

Dormant Commerce Clause Challenge

Appellant's final issue contends that the statute is unconstitutional because it unduly burdens interstate commerce by attempting to place regulations on Internet users everywhere by forbidding online age-play everywhere. Appellant's contention is grounded in the supremacy of the United States Congress to legislate in this area as provided for in the Commerce Clause. *See* U.S. CONST. art. I, § 8. According to appellant's theory, by the application of section 33.021, Texas is attempting to regulate communications that may be occurring outside of the state and this attempted regulation is a burden on interstate commerce that is disproportionate to local benefits. Appellant cites the Court to *Am. Library Ass'n v. Pataki,* 969 F. Supp. 160, 163 (S.D.N.Y. 1997), to support his theory.

Our analysis of the *Pataki* decision leads to the conclusion that the factual setting of *Pataki* is distinguishable from the factual pattern before the Court. In *Pataki,* the court was addressing a New York statute that criminalized communications that depicted actual or simulated nudity, sexual conduct, or sado-masochistic abuse via computer communications. *See id.* at 162. Missing from the prohibitions declared

unconstitutional in *Pataki* is any type of prohibition regarding solicitation of a minor for the purposes of engaging in sexual contact, sexual intercourse, or deviate sexual intercourse. This is telling in our opinion because, later in *Pataki,* the author points out that the plaintiffs were not challenging the sections of the statute that criminalized an adult's actions in luring children into sexual contact by communicating with them via the Internet. *See id.* at 179.

With this observation in mind, we turn to the test enunciated by the United States Supreme Court when dealing with a Commerce Clause challenge to a statute. *See Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S. Ct. 844, 23 L. Ed. 2d 174 (1970). According to *Pike,* "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* Though this maxim has evolved over the following years of United States Supreme Court jurisprudence, the applicable portion, the balancing between the putative local benefits and inquiry into whether the burden imposed on interstate commerce is clearly excessive, is still the applicable inquiry. *See United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.,* 550 U.S. 330, 346, 127 S. Ct. 1786, 167 L. Ed. 2d 655 (2007).

We first point out that appellant is not contending that the statute is not acting even-handedly. With regard to the putative local benefits of the statute at issue, it is beyond contention that stopping the solicitation of minors via the Internet is of paramount local importance. *See Ex parte Lo,* 424 S.W.3d at 21. Whether the statute's effect on interstate commerce is merely incidental or excessively burdensome is the

next inquiry. *Pike,* 397 U.S. at 142. In regard to this inquiry, there is nothing before the Court that would guide our analysis, save and except for appellant's simple assertion that the burden on interstate commerce is disproportionate to the local benefits. There is nothing before us to indicate how and to what extent this statute burdens interstate commerce. From the perspective of the Court, any effect on interstate commerce would be merely incidental. Such, incidental effect on interstate commerce is not sufficient for us to declare the statute unconstitutional under the Commerce Clause. *See id.*; *see also Ex parte Wheeler*, 2015 Tex. App. LEXIS 10117, at *15.

Further, the State has pointed to cases in other states where similar statutes have been held constitutional in the face of a Commerce Clause challenge. *See State v. Snyder,* 155 Ohio App. 3d 453, 467 (Ohio Ct. App. Third Dist. 2003); *State v. Colosimo,* 142 P.3d 352, 356-57 (Nev. 2006); *People v. Hsu,* 82 Cal. App. 4th 976, 983 (Cal. App. First App. Dist., Div. Five 2000, rev. denied). Accordingly, we hold that section 33.021 does not violate the Commerce Clause and appellant's third issue is overruled.

Conclusion

Having overruled all of appellant's issues, the trial court's judgment denying habeas corpus relief is affirmed.

Mackey K. Hancock<br>
Justice

Publish.

14